Case 1:10-cv-05989-SLT Document 30 Filed 01/30/13 Page 1 of 14 PageID #: 1935

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 3 0 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KWAME SCOTT,

                Petitioner,

       -against-

ROCK, Superintendent of the Upstate Correctional
Facility,

                Respondent.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-5989 (SLT)

**TOWNES, United States District Judge:**

In December 2010, petitioner Kwame Scott ("Petitioner"), proceeding *pro se*, commenced this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 (the "Petition"), challenging his 2007 conviction for murder in the second degree. In February 2011, Petitioner moved in the Supreme Court of the State of New York, Kings County, to vacate his conviction pursuant to New York Criminal Procedure Law §440.10(1)(g). That motion having since been denied, Petitioner now moves pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to amend his Petition; to stay this action in order to permit him to exhaust additional grounds for habeas corpus relief; and for appointment of counsel. For the reasons stated below, Petitioner's Rule 15(a) motion is granted to the extent of permitting Petitioner to amend his Petition to add the "newly discovered evidence" claim raised in the §440 motion. Petitioner's other motions are denied without prejudice.

## *BACKGROUND*

Petitioner commenced this action in December 2010 by filing his Petition in the United States District Court for the Southern District of New York (the "SDNY"). Since that Petition sought to challenge a judgment of conviction entered in the Supreme Court of the State of New York, Kings County, the action was promptly transferred to this Court by the SDNY. By Order

to Show Cause dated January 5, 2011, this Court directed Respondent to "show cause . . ., by the filing of a return to the petition, why a writ of habeas corpus should not be issued." Order to Show Cause dated Jan. 5, 2011, at 1. The deadline for filing that return was subsequently extended, at Respondent's request, to March 11, 2011.

On February 17, 2011, Petitioner wrote a letter to the Clerk of Court, informing him that he was filing a "440.10 motion" in State court. Although Petitioner may not have sent a copy of this letter to Respondent, the letter was uploaded onto this Court's Electronic Case Filing ("ECF") system on February 21, 2011. Moreover, Respondent's counsel – the Office of the Kings County District Attorney (the "DA") – was doubtless already aware of the §440 motion, which had been served on or about February 10, 2011, and was returnable March 17, 2011. Nonetheless, Respondent's counsel did not seek a further extension of time, but filed a return to the Petition on March 10, 2011.

Petitioner's §440 motion sought to vacate Petitioner's 2007 conviction on the ground of newly discovered evidence: namely, an affidavit dated January 14, 2011, from one Leitoya Dixon, a woman who claimed to be an eyewitness to the murder for which Petitioner had been convicted. In her affidavit, Ms. Dixon stated that the shooter was one Dwight Clark, also known as "Biggie," and not Petitioner. In addition, Ms. Dixon stated that, several months after the shooting, she had divulged this information to a man who identified himself as Petitioner's defense lawyer. However, that man was not David Schwartz – the lawyer who represented Petitioner at trial – and did not contact her again, except to ask a question regarding another eyewitness to the shooting. Ms. Dixon claimed that she subsequently became fearful of retaliation from Clark and, therefore, did not tell anyone else of her observations of the shooting.

2

On July 19, 2011, Justice Deborah A. Dowling of the Kings County Supreme Court denied Petitioner's §440 motion, noting, *inter alia*, that Ms. Dixon had not come forward earlier even though she alleged that Clark left her neighborhood in 2007. On August 24, 2011, Petitioner wrote a letter to the Clerk of Court, stating that he was seeking leave to appeal the denial of the §440 motion and asking for information regarding how to amend his Petition. About one month later, Petitioner wrote to this Court, requesting that his Petition be held in abeyance until he received "a Decision in regards to a 440 motion that was placed in to the Lower Courts." Letter to Hon. Sandra L. Townes from Kwame Scott, dated Sept. 26, 2011, at 1. Petitioner stated that he wished to "add this motion to [his] Petition," but provided no details regarding the basis for the §440 motion. *Id.*

In letters dated May 28 and 31, 2012, Petitioner again wrote to the Clerk of Court, specifically requesting permission to amend his Petition. In response to these letters, this Court issued an order dated July 3, 2012, advising Petitioner that he could not amend his Petition as of right and explaining that he would have to either (1) obtain the written consent of Respondent or (2) make a motion pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The Court directed Petitioner to seek Respondent's written consent to amend the Petition by sending a letter to the DA on or before July 20, 2012, describing the amendment(s) Petitioner wanted to make. The Court further directed the DA to respond to Petitioner's letter by July 30, 2012, by stating whether Respondent would consent to amendment of the petition. Finally, the Court ordered:

> [I]f Respondent does not consent, Petitioner shall serve a motion to amend the petition on the Respondent by mailing a copy of the motion to the DA on or before August 17, 2012. In light of Petitioner's *pro se* status, that motion may take the form of a letter. However, the letter must expressly state how Petitioner wishes to amend his petition, state the issue(s) Petitioner seeks to add, and explain why the issue(s) could not have been exhausted sooner.

3

Petitioner complied with this Court's order by sending a letter to the DA dated July 14, 2012 (the "July 14 Letter"). In that letter, Petitioner alluded to two additional grounds for habeas corpus relief. First, Petitioner sought to amend his Petition to add the "newly discovered evidence" issue raised in his §440 motion. Second, Petitioner asserted that Assistant District Attorney Susan Millus, a prosecutor who had appeared in pre-trial proceedings, had committed a *Brady* violation by failing to reveal Dixon's exculpatory version of events.

Petitioner's *Brady* argument relied primarily on a pre-trial sidebar conference, in which ADA Millus stated that a woman with a tattoo on her face had separately approached both a confidential witness and ADA Millus herself, stating that she knew Petitioner and knew the confidential witness's identity. ADA Millus did not know the woman, but stated that she claimed to be Petitioner's sister. At the sidebar, the ADA expressed concern that the woman might divulge the witness's identity to Petitioner, thereby enabling Petitioner to tamper with the witness. Although ADA Millus did not even suggest that the woman had discussed the shooting with her or with the three detectives who were with the ADA at the time, Petitioner assumed that the woman was Dixon, who also had tattoos on her face, and that she had divulged exculpatory information to the prosecutor.

The DA responded to Petitioner's July 14 Letter in a letter addressed to the Court and dated July 30, 2012 (the "July 30 Letter"). In that letter, the DA opposed Petitioner's request for permission to amend the Petition. The DA asserted that the Petitioner's first new ground for habeas corpus relief – the newly discovered evidence claim – was time-barred because it did not "relate back" to the original Petition. The DA also argued that Petitioner's second ground was procedurally barred because the *Brady* issue had not been raised in any State court proceedings.

4

On August 13, 2012, this Court received four submissions from Petitioner: (1) a copy of the July 14 Letter; (2) a one-paragraph note dated July 31, 2012, in which Petitioner stated that he had not yet received a response from the DA and, therefore, assumed that the DA had no objection to his amending the Petition; (3) a 27-page document, entitled "Application for Leave to File a Certificate of Appealability," which listed several new grounds for habeas corpus relief; and (4) an application for appointment of counsel. Approximately one month later, this Court received Petitioner's reply to the DA's July 30 Letter. Finally, in mid-January 2013, this Court received a letter from Petitioner dated January 3, 2013, in which Petitioner asked this Court to hold his action in abeyance to enable him to exhaust other, unspecified claims in State court.

## DISCUSSION

The submissions which this Court received from Petitioner on August 13, 2012, can be construed in at least two ways. First, they can be strictly construed as (1) the letter to the DA required by this Court's July 3, 2012, order; (2) a letter notifying this Court that the DA failed to respond to Petitioner's letter within the time allowed by the July 3, 2012, order; and (3) a premature motion for a Certificate of Appealability. Alternatively, the submission can be construed as (1) a letter motion to amend the Petition; (2) a letter requesting that the motion be deemed unopposed; and (3) a copy of a proposed amended petition.

There are several reasons to construe Petitioner's submissions in the latter manner. First, all of these submissions were received by the Court on August 13, 2012 – only four days before the August 17, 2012, deadline for filing the motion to amend. Second, Petitioner's one-paragraph note dated July 31, 2012, stated, *inter alia*, that Petitioner was enclosing a copy of his "amend[ed] petition." The "Application for Leave to File a Certificate of Appealability," which contains six enumerated "points," is the only document submitted with Petitioner's one-

5

paragraph note which could possibly be construed as a proposed amended petition. Third, Petitioner subsequently filed a "reply" to the DA's July 30 Letter, which opposed Petitioner's request for permission to amend the Petition.

Moreover, this Court recognizes its obligation to "construe . . . liberally" the submissions of a *pro se* litigant and to "'interpret them to raise the strongest arguments that they suggest.'" *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). In light of this obligation and the facts set forth in the above paragraph, this Court construed Document No. 23 – the copy of the July 14 Letter to the DA, which Petitioner filed on August 13, 2012 – as Petitioner's motion to amend the Petition and docketed this document as a "Letter Motion to Amend/Correct/Supplement the Petition." It is unclear whether Respondent construed Document No. 23 in this manner, since Respondent never re-filed his July 30 Letter opposing the motion to amend or otherwise responded to Petitioner's August 13, 2012, submissions. However, the DA's July 30 Letter fully addresses all of the arguments raised in Petitioner's July 14 Letter. Accordingly, this Court construes Petitioner's motion to amend the Petition as fully briefed and will proceed to adjudicate it.

### *The Motion to Amend the Petition*

Rule 15(a)(2) of the Federal Rules of Civil Procedure specifically provides that "the court should freely give leave [to amend a pleading] when justice so requires." The Supreme Court has made clear that Rule 15(a)(2)'s "mandate is to be heeded." *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Thus, "[w]hen a party requests leave to amend its complaint, permission generally should be freely granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). However, "[l]eave to amend may properly be denied if the amendment

would be futile," *id.* (citing *Foman*, 371 U.S. at 182), or "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002).

In the July 30 Letter opposing Petitioner's request for permission to amend the Petition, Respondent principally argues that amendment would be futile. First, Respondent argues that the one-year period of limitations set forth in 28 U.S.C. §2244(d)(1) precludes Petitioner from amending his Petition to add the "newly discovered evidence" claim raised in Petitioner's §440 motion unless that claim "relates back" to the original Petition. Second, Respondent argues that the *Brady* issue raised in Petitioner's July 14 Letter is procedurally barred since "this claim was never presented to the state courts in any manner whatsoever." July 30 Letter at 2.

With respect to the first of these arguments, Respondent has not established that the "newly discovered evidence" claim is time-barred. As Respondent correctly notes, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year period of limitations with respect to claims for habeas relief. However, under 28 U.S.C. §2244(d)(1), the one-year period does not invariably run from the date on which a petitioner's conviction becomes final. Rather, §2244(d)(1) provides that limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

7

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Moreover, under 18 U.S.C. §2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [§2244(d)(1)]."

In this case, it is unclear precisely when Petitioner, through the exercise of due diligence, could have learned of Ms. Dixon's exculpatory account of the shooting. In the January 14, 2011, affidavit which Ms. Dixon executed in connection with Petitioner's §440 motion, Ms. Dixon states only that she is "*now* coming forward . . . to set the record straight" about the shooting. Affidavit of Leitoya M. Dixon in Support of Motion to Vacate, dated Jan. 14, 2011, at ¶16 (emphasis added). However, neither this affidavit nor the affidavit of Patrick Michael Megaro – the attorney who filed the §440 motion of Petitioner's behalf – indicates precisely when Ms. Dixon first spoke to Petitioner or to Mr. Megaro.

It is also unclear precisely how long Petitioner's §440 motion was pending before the State courts. According to documents supplied by Respondent's counsel, the motion was filed on February 10, 2011, and was denied by Justice Dowling on July 19, 2011. There is no evidence as to whether or when (1) Petitioner applied for leave to appeal this denial of his §440 motion and (2) leave was denied by the Appellate Division of the Supreme Court of the State of New York. This Court notes, however, that Petitioner's letter dated September 26, 2011, implied that he had sought leave to appeal and that leave had not yet been denied as of that date. *See* Letter to Hon. Sandra L. Townes from Kwame Scott, dated Sept. 26, 2011 (requesting that this case be held in abeyance until Petitioner received "a Decision in regards to a 440 motion that was placed in to the Lower Courts").

8

Respondent has not provided any evidence that Petitioner, in the exercise of due diligence, could have learned of Ms. Dixon's exculpatory account prior to January 14, 2011. Moreover, the evidence before this Court suggests that Petitioner's §440 motion was pending for at least the 228 days between February 10 and September 26, 2011. Assuming that Petitioner first learned of Ms. Dixon's exculpatory evidence on January 14, 2011, and that the §440 motion remained pending for 228 days, the one-year limitations period relating to the newly discovered evidence claim would not have expired until at least August 29, 2012. By that time, Petitioner had repeatedly asked this Court for permission to amend his Petition, had unsuccessfully requested that Respondent stipulate to that amendment, and had already filed a copy of the July 14 Letter which this Court construes as his motion to amend the Petition.

For these reasons, this Court cannot find, at this juncture, that it would be futile to permit Petitioner to amend his Petition to raise the claim set forth in Petitioner's §440 motion. In responding to the amended petition, Respondent may renew this timeliness argument if evidence in the record establishes that Petitioner, in the exercise of due diligence, could have learned of Ms. Dixon's exculpatory account prior to January 14, 2011, and/or that the §440 motion was exhausted prior to September 26, 2011.

With regard to Respondent's second argument, this Court agrees with Respondent that it may be futile for Petitioner to add a claim regarding ADA Millus's failure to disclose *Brady* material. Under 28 U.S.C. §2254(b)(1), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." This exhaustion requirement "is not satisfied unless the federal claim has been 'fairly presented' to the state courts." *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005). "A petitioner satisfies

9

the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (internal quotation marks omitted).

This Court has reviewed Petitioner's appellate brief and the §440 motion dated February 10, 2011. Neither of these submissions fairly presents the *Brady* claim which Petitioner now seeks to raise. Moreover, there is nothing to suggest that Petitioner filed any other post-conviction motions prior to filing his motion to amend the Petition. The Petition unequivocally states that Petitioner had not "filed any other petitions, applications, or motion concerning [his] judgment of conviction in any state court" prior to filing the Petition in this case, and Justice Dowling's July 19, 2011, order does not allude to any other post-conviction motions. Accordingly, Petitioner shall not raise the *Brady* claim in his Amended Petition unless he first provides evidence to this Court to establish that he has exhausted that *Brady* claim in State court.

### *Stay and Abeyance*

In his letter dated January 3, 2013, Petitioner seeks to stay this case so that he can "address . . . additional issues" in State court. Petitioner does not explain what issues he seeks to exhaust, or explain why those issues could not have been exhausted sooner.

As recently as March 2005, stays of the sort that Petitioner seeks were routinely granted in this Circuit pursuant to *Zarvela v. Artuz*, 254 F.3d 374, 481 (2d Cir. 2001). However, on March 30, 2005, the United States Supreme Court imposed new restrictions with respect to the use of the "stay and abeyance" procedure. In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that, while district courts have discretion to grant stays, "stay and abeyance should be available only in limited circumstances." *Id.* at 277. Specifically, the Supreme Court held that a stay should be granted only if a petitioner can show "good cause" for failing to exhaust all

available State remedies earlier and, even then, only if the unexhausted claims are not "plainly meritless." *Id.*

In light of *Rhines*, this Court cannot grant a stay and hold these proceedings in abeyance on the strength of Petitioner's one-page letter dated January 3, 2013. If Petitioner wishes to seek a stay and abeyance, he must file another application, demonstrating "good cause" for his failure to raise previously the claim he is now planning to exhaust in State court. In addition, he must explain the claims to be raised in his post-conviction motion with sufficient particularity to enable this Court to make an independent determination that his claims are not "plainly meritless."

In determining when and whether to re-apply for stay and abeyance, petitioner may wish to consider whether the claim(s) he is planning to exhaust in State court can be raised in this action. In order to raise any such claims, Petitioner will have to move to amend the Petition in this case yet again pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. *See Mayle v. Felix*, 545 U.S. 644, 655-56 (2005). If the one-year period of limitations relating to a claim has already run, an amendment to add that claim to the Petition in this case will be denied unless the new claim "relates back" to the date of the original pleading. A claim "relates back" if it arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). A claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

### *Appointment of Counsel*

This Court also cannot grant Petitioner's request for counsel. In habeas corpus cases, a district court is required to appoint counsel for qualified indigents only if an evidentiary hearing

11

is warranted. *See* Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts. However, "a court may appoint counsel at an earlier stage if it deems appointment desirable." *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

A district court considering whether to request an attorney for a *pro se* civil litigant must first determine whether the litigant's position seems "likely to be of substance." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Only if a litigant's claims meet this "threshold requirement," should a court consider other factors, such as the "plaintiff's ability to obtain representation independently, . . . his ability to handle the case without assistance in light of the required factual investigation, [and] the complexity of the legal issues . . . ." *Cooper*, 877 F.2d at 172.

In this case, this Court has no reason to believe that an evidentiary hearing will be necessary or warranted. Petitioner was represented by counsel on appeal and during the §440 proceedings and those attorneys have already created a record on which Petitioner can base his claims for habeas corpus relief. While counsel might assist Petitioner in further developing his *Brady* claim against ADA Millus, there is nothing to suggest that this claim has any merit whatsoever. To be sure, ADA Millus admitted at a sidebar conference that, while in the company of three detectives, she had been approached by a woman with a tattoo on her face who professed to know Petitioner and who asked about the case. However, there is nothing to suggest that this tattooed woman – even if she were Ms. Dixon – gave ADA Millus an account of the shooting. Indeed, Ms. Dixon states that she gave her account of the shooting to a man who identified himself as a defense lawyer, not to a female prosecutor in the company of several detectives.

While this Court can "request an attorney to represent any person unable to afford counsel," 28 U.S.C. §1915(e)(1), it declines to do so at this juncture. This Court has conducted a thorough review of the Petition, the §440 motion, and the responses thereto and concludes that the Amended Petition is not so likely to be of substance as to warrant appointment of counsel. Moreover, even if this Court concurred with Petitioner's assessment of the merits of this case, it would not appoint counsel for two reasons. First, this Court does not find the legal or factual issues in this case to be particularly complex. Second, the fact that Petitioner's submissions are unusually articulate and well-researched suggests that Petitioner has the ability to represent himself adequately.

### *CONCLUSION*

For the reasons set forth above, Petitioner's motion to amend his Petition is granted to the extent of permitting amendment to add the "newly discovered evidence" claim raised in Petitioner's §440 motion dated February 10, 2011. Petitioner shall not raise the *Brady* claim discussed in his July 14 Letter unless he first provides evidence to this Court to establish that he has exhausted that *Brady* claim in State court. Such evidence, if any, must be provided to the Court on or before February 15, 2013, and attached to a letter/motion seeking reconsideration of this Memorandum and Order.

Unless Petitioner moves for reconsideration, Petitioner shall have until March 1, 2013, in which to file an Amended Petition. That submission shall be entitled, "Amended Petition," shall bear Docket Number 10-CV-5989 (SLT), and shall not raise any issues other than (1) the ones raised in the original Petitioner and (2) the "newly discovered evidence" claim raised in Petitioner's §440 motion dated February 10, 2011. Respondent shall have until March 29, 2013, in which to file a response to that Petition, and Petitioner shall have until April 15, 2013, in

13

which to file a reply. If Petitioner does not file an Amended Petition within the time allowed, this Court may proceed to adjudicate this action without further notice.

Petitioner's motion for stay and abeyance is denied without prejudice to renewing the motion. In accordance with the requirements of *Rhines v. Weber, supra*, the renewed motion must demonstrate "good cause" for Petitioner's failure to raise previously the claim(s) he is now planning to exhaust in State court. In addition, Petitioner must set forth the claim(s) he is planning to raise in State court with sufficient particularity to enable this Court to make an independent determination that these claims are not "plainly meritless."

Petitioner's motion for appointment of counsel is denied at this juncture.

**SO ORDERED.**

/S/ Judge Sandra L. Townes
/SANDRA L. TOWNES
United States District Judge

Dated: January 24, 2013
Brooklyn, New York