UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KWAME SCOTT,

                       Petitioner,         **MEMORANDUM AND ORDER**

    -against-                                 10-CV-5989 (SLT)

ROCK, Superintendent of the Upstate Correctional
Facility,

                       Respondent.
----------------------------------------------------------------x

**TOWNES, United States District Judge:**

      Petitioner Kwame Scott ("Petitioner") moves to amend for a second time his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent opposes Petitioner's motion, arguing that it would be futile to grant leave to amend because the three new grounds for relief that Petitioner proposes adding would be time-barred by the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). For the reasons set forth below, the timeliness of these three new grounds depends on whether Petitioner timely applied for leave to appeal from the denial of his two post-conviction motions. Accordingly, the Court orders Petitioner to provide additional evidence or legal arguments relating to the timeliness of these two leave applications.

## BACKGROUND

      Around 11:25 p.m. on June 26, 2005, Jerome Crump, a member of the Bloods gang, was shot multiple times shortly after exiting a grocery store located on the corner of Pacific Street and Ralph Avenue, Brooklyn, in territory controlled by a rival gang, the Crips. On July 9, 2005, shortly after Crump died of his wounds, the police conducted lineups in which two eyewitnesses —Alex Roman and Abdullah Alsayedi—identified Petitioner as the shooter. Petitioner was subsequently indicted in the Supreme Court of the State of New York, Kings County, on charges

of murder in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.

Prior to the start of trial, the prosecution moved *in limine* for permission to introduce testimony from a gang expert, Detective Phillip O'Rourke. The prosecutor argued that the expert testimony was relevant to motive and intent and served to complete the narrative of the crime. In response, defense counsel argued that the testimony was irrelevant and was being introduced solely "to create [a] prejudicial effect" by portraying Petitioner as a gang member. The trial judge, Justice Deborah A. Dowling, decided to admit the expert testimony.

## *The Trial*

Jury selection commenced in late July 2007. Following the third round of voir dire, defense counsel claimed that the prosecution was engaging in "a systematic removal of African-American jurors," in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Defense counsel did not engage in any type of statistical analysis in support of this claim. Rather, he merely listed the six black venirepersons against whom the prosecution had exercised peremptory challenges and stated, "I don't believe there is a race neutral reason to remove those jurors and at this point six has become a systematic removal." In response, the prosecutor argued that the defense had "not made out a prima facie case." She noted that four of the jurors selected were African-American and that she had not challenged four other black venirepersons, against whom defense counsel had exercised peremptory challenges. Justice Dowling denied the *Batson* challenge, holding that defense counsel had not made a prima facie showing of race discrimination.

The People's opening statement was uneventful and defense counsel did not object to any portion of it. In contrast, the prosecutor objected to defense counsel's opening on 14 separate

occasions. The first objection was overruled. The remaining objections, with the exception of one objection which was premature, were all sustained.

During the two-week trial that followed, a dozen people testified on behalf of the prosecution, including Roman, Alsayedi, Detective O'Rourke and seven other detectives and police officers. The defense called three witnesses: an expert on eyewitness identification, an alibi witness who testified that she had been conversing with Petitioner near the corner of Blake Avenue and Cleveland Street until a few minutes after 11:00 p.m. on the evening of June 26, 2005, and a private investigator who testified that it took 10 to 15 minutes to drive from that East New York corner to the crime scene.

Following summations in which the prosecutor and defense counsel both interrupted each other with multiple objections, Justice Dowling charged the jury on all three offenses charged in the indictment. The offenses were charged in the alternative, so the verdict sheet instructed the jury to cease deliberations if they found Petitioner guilty of murder. The jury deliberated for less than a day before finding Petitioner guilty of the top count: murder in the second degree. On October 30, 2007, Justice Dowling sentenced Petitioner to an indeterminate term of 25 years' to life imprisonment.

*The Direct Appeal*

Petitioner appealed his conviction on four grounds. First, he argued that the erroneous admission of Detective O'Rourke's expert testimony deprived him of a fair trial. Second, Petitioner argued that he was deprived of a fair trial by a combination of (1) improper and prejudicial comments made by the prosecutor during her opening statement and summation and (2) baseless objections to defense counsel's opening statement and summations. Third,

3

Petitioner alleged a *Brady* violation, asserting that he was denied a fair trial because the prosecution and trial court withheld "evidence favorable to the defense regarding information material to the credibility" of Alsayedi. Fourth, Petitioner argued that the prosecution violated his Constitutional rights to due process and equal protection of the law through its discriminatory use of peremptory challenges during voir dire.

The Appellate Division of the Supreme Court of the State of New York, Second Department (the "Appellate Division"), affirmed Petitioner's conviction. *People v. Scott*, 70 A.D.3d 977, 897 N.Y.S.2d 138 (N.Y. App. Div. 2010). Petitioner's application for leave to appeal the New York Court of Appeals was denied on June 8, 2010. *People v. Scott*, 15 N.Y.3d 757, 906 N.Y.S.2d 830 (2010). There is no indication that Petitioner ever petitioned the United States Supreme Court for a writ of certiorari.

***The Petitions for a Writ of Habeas Corpus and Post-Conviction Motions***

On November 5, 2010, Petitioner commenced this action by placing a petition for a writ of habeas corpus (the "Petition") in a mailbox at Upstate Correctional Facility, the state prison in which he was then incarcerated. The Petition raised the same four grounds that Petitioner had raised on his direct appeal.

On or about February 15, 2011, Petitioner—then represented by counsel—filed a motion pursuant to section 440.10 of New York Criminal Procedure Law (the "CPL"), seeking to vacate his conviction on the basis of newly discovered evidence. The § 440 motion principally relied on an affidavit dated January 14, 2011, and signed by Leitoya M. Dixon, a woman who claimed that she witnessed Crump's murder and that the perpetrator was someone other than Petitioner. In a Decision and Order dated July 19, 2011, Justice Dowling denied the motion. The judge

4

questioned the veracity of Dixon's affidavit, noting, *inter alia*, that she incorrectly claimed that the shooting took place on July 27, 2005—a day after the incident actually occurred. The trial judge also noted that Petitioner had failed to show that Dixon's evidence could not have been obtained earlier since Dixon, who claimed to have been intimidated into silence by the actual perpetrator, moved out of the neighborhood in 2007.

According to an Affidavit of Service which is attached to the Opposition to the Second Motion to Amend the Petition as Exhibit F, Petitioner did not apply for leave to appeal from the denial of his § 440 motion until March 14, 2012. On that date, Petitioner placed in a prison mailbox both a motion for permission to appeal from the denial of his § 440 motion and a motion for an order extending his time to appeal. In a Decision and Order dated July 12, 2012, an Associate Justice of the Appellate Division denied Petitioner's application for leave to appeal. That decision and order did not mention or rule upon Petitioner motion for an extension of time.

In May 2012, Petitioner requested permission to amend the Petition in order to add both the "newly discovered evidence" argument raised in his § 440 motion and a *Brady* claim. The prosecutor opposed Petitioner's request for permission to amend the Petition, arguing that these two claims were time-barred. The Court granted Petitioner permission to amend his Petition to add the "newly discovered evidence" claim, but denied Petitioner permission to raise the *Brady* claim unless he could provide evidence to establish that he had exhausted that claim in State court. *Scott v. Rock*, No. 10-CV-5989 (SLT), 2013 WL 360398, at *1 (E.D.N.Y. Jan. 30, 2013). Petitioner never provided this evidence.

Sometime in January 2013, Petitioner, proceeding pro se, filed a second motion pursuant to CPL § 440.10 (the "Second § 440 Motion"), raising three additional claims. First, Petitioner

alleged ineffective assistance of trial counsel, claiming that his attorney had not adequately cross-examined the two eyewitness and had failed to call unspecified "alibi witnesses." Second, Petitioner argued that his right to counsel was violated because the police failed to contact his lawyer before placing him in the July 9, 2005, lineups. Third, Petitioner claimed that those out-of-court identification procedures were so impermissibly suggestive as to create a substantial likelihood of misidentification.

It is unclear precisely when the Second § 440 Motion was filed. According to an Affidavit of Service which is attached to the Opposition to the Second Motion to Amend the Petition as Exhibit G, Petitioner placed the motion in a prison mailbox on January 9, 2013. The Court notes, however, that Petitioner's affidavit in support of that motion was not notarized until January 16, 2013.

Justice Dowling denied the Second § 440 Motion in a Decision and Order dated September 26, 2013. The record does not indicate when or whether this Decision and Order was served on Petitioner. In addition, although it is clear that Petitioner applied to the Appellate Division for leave to appeal from the denial of his Second § 440 Motion, there is nothing in the record to suggest when this application was mailed. The record reflects only that Petitioner's application was denied by an Associate Justice of the Appellate Division on July 3, 2014.

*The Instant Motion*

In a letter dated July 14, 2014, Petitioner requested permission to amend his petition for a second time in order to add the three claims which had been raised in his Second §440 Motion. In a memorandum and order dated December 12, 2014, the Court construed that letter as a motion to amend the petition and directed Respondent to respond to that motion by January 5,

2015. After requesting a brief extension, Respondent filed his opposition to the motion to amend on February 2, 2015.

In those opposition papers, Respondent argues that it would be futile to permit Petitioner to amend his petition to add the three newly exhausted claims. Respondent principally argues that those three new claims would be time-barred because 1) the one-year limitation period expired before Petitioner even filed the Second § 440 Motion, 2) none of the three claims "relate back" to the claims in the original petition and 3) there is no basis for equitable tolling.

Although Respondent's first argument misstates some of the dates at issue, the gist of that argument is as follows. Petitioner's judgment became final when the deadline for seeking a writ of certiorari in the United States Supreme Court expired, 90 days after the New York Court of Appeals denied leave to appeal. Respondent incorrectly asserts that the Court of Appeals denied leave on June 10, 2010, and calculates that the one-year limitations period commenced on September 8, 2010. *See* Memorandum of Law in Opposition to Second Motion to Amend the Petition, p. 4. In fact, the Court of Appeals denied leave on June 8, 2010, *see Scott*, 15 N.Y.3d at 757, so the limitations period began on September 6, 2010.

The limitations period continued to run until Petitioner filed his first § 440 motion. Relying on the date of a cover letter which Petitioner's counsel sent to the Clerk of Kings County Supreme Court along with that motion, Respondent claims that the first § 440 motion was filed on February 15, 2015, by which time 160 days of the one-year limitations period had already expired. In fact, a date stamp on the cover letter—which is attached to the Opposition to the Second Motion to Amend the Petition as Exhibit E—reflects that the § 440 motion was not received by the Supreme Court until February 17, 2011. Since the one-year period started

7

running on September 6, 2010, at least 164 days had actually expired by the time the § 440 motion was filed.

Citing to 28 U.S.C. § 2244(d)(2), Respondent implicitly acknowledges that the one-year limitation period was tolled during the time that the § 440 motion remained pending. Respondent argues, however, that because Petitioner did not timely appeal from Justice Dowling's July 19, 2011, decision and order denying his motion, the limitation period resumed running on August 18, 2011—30 days after the date of Justice Dowling's order. Specifically Respondent argues:

> Following the denial of his first motion to vacate, petitioner did not file a timely notice of appeal to the Appellate Division. Petitioner was required to file a request for leave to appeal to the Appellate Division within thirty days of the denial of his motion to vacate, by August 18, 2011. *See* C.P.L. § 460.10(1)(a). Petitioner filed his application for leave to appeal to the Appellate Division by papers mailed by petitioner on March 14, 2012 .... Because petitioner did not file a timely notice of appeal, his late notice was not "properly filed" and he is therefore not entitled to tolling for the period during which his application for leave to appeal the motion to vacate the judgment was pending.

Memorandum of Law in Opposition to Second Motion to Amend the Petition, p. 5.

According to Respondent, the one-year period of limitation expired on March 10, 2012—205 days after it resumed running on August 18, 2011. In fact, assuming the limitation period resumed running on August 18, 2011, it would have expired 201 days later: on March 6, 2012. In either event, the one-year limitation period expired more than a month before Petitioner filed even his first motion to amend the Petition and about nine months before Petitioner filed his Second § 440 Motion.

## DISCUSSION

The Federal Rule of Civil Procedure governing pleading amendments, Rule 15, is applicable to habeas proceedings. *Mayle v. Felix*, 545 U.S. 644, 655 (2005); *see* 28 U.S.C. § 2242 (applications for a writ of habeas corpus "may be amended ... as provided in the rules of procedure applicable to civil actions"). Rule 15(a)(2) specifically provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." However, "[l]eave to amend may properly be denied if the amendment would be futile," *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)), or "where necessary to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive." *Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002).

In this case, Respondent principally argues that it would be futile to grant Petitioner leave to amend because his three proposed claims would be time-barred. As Respondent correctly notes, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitation with respect to claims for habeas relief. *See* 28 U.S.C. § 2244(d)(1). That one-year period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 18 U.S.C. §2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [§2244(d)(1)]."

If an amended petition is filed after this one-year period of limitation has run, the claims contained therein are time-barred unless they "relate back" to the date of the original petition or unless the petitioner can show that extraordinary circumstances warrant equitable tolling. *See Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010) (summary order). "Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Rule 15(c) provides that:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced

in defending on the merits; and (ii) knew or should have known
that the action would have been brought against it, but for a
mistake concerning the proper party's identity.

Since AEDPA does not mention relation back and since the amendment at issue did not change the respondent or the name of the respondent, the question of whether claims in an amended habeas corpus petition relate back to the original petition turns on whether those claims arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(2). In *Mayle v. Felix*, *supra*, the Supreme Court rejected a broad reading of this language which would have permitted relation back "so long as the new claim stem[med] from the habeas petitioner's trial, conviction or sentence." 545 U.S. at 656. Rather, the *Mayle* Court held that "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Id.* at 659 (internal quotations and citations omitted). In other words, the Supreme Court limited relation back to those "claims in an amended petition ... that arose from the same core facts alleged in the original petition ...." *Gibson*, 407 F. App'x at 519.

The three new grounds for relief which petitioner wishes to raise in his proposed second amended petition do not arise from the "same core facts" alleged in the original petition. Petitioner's original petition raised the four grounds which Petitioner raised on direct appeal. First, Petitioner argued that the erroneous admission of Detective O'Rourke's expert testimony deprived him of a fair trial. Second, Petitioner argued that he was deprived of a fair trial by a combination of (1) improper and prejudicial comments made by the prosecutor during her opening and summation and (2) baseless objections to Petitioner's opening and summations. Third, Petitioner alleged a *Brady* violation, asserting that he was denied a fair trial because the

11

prosecution and trial court withheld "evidence favorable to the defense regarding information material to the credibility" of Alsayedi. Fourth, Petitioner advanced a *Batson* challenge, arguing that the prosecution violated his Constitutional rights to due process and equal protection of the law through its discriminatory use of peremptory challenges during voir dire.

Petitioner now proposes amending the petition for a second time to add the three claims raised in Petitioner's Second §440 Motion. Two of the three claims relate to the lineup procedure, which was not addressed in the original petition. The remaining claim raises an ineffective assistance claim relating to trial counsel's cross-examination of the two eyewitness and his failure to call unspecified "alibi witnesses." These three claims relate to different portions of the trial than the claims raised in the original Petition and, accordingly, do not "relate back."

Even if an amended petition does not "relate back" to the original pleading, a petitioner may, "in 'rare and exceptional circumstances' ... invoke the courts' power to equitably toll the limitations period." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)). To qualify for equitable tolling, however, "the petitioner must establish that extraordinary circumstances prevented him from filing his [amended] petition on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Id.* (internal quotations and citation omitted); *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007). "[I]gnorance of law does not constitute a rare and extraordinary circumstance that would merit equitable tolling." *Ruiz v. Poole*, 566 F. Supp. 2d 336, 341 (S.D.N.Y. 2008) (quoting *Ayala v. Fischer*, No. 04 Civ. 3404 (LAK), 2004 WL 2435523, at *1 (S.D.N.Y. Nov. 2, 2004)).

In this case, Petitioner has not alleged, much less established, a basis for equitable tolling. Petitioner was undoubtedly aware at the time of the lineup that the police had not contacted his attorney prior to the identification procedures. In addition, Petitioner was present throughout his trial and witnessed both the cross-examination of the two eyewitnesses and the entirety of the defense case. By the end of trial, he knew or should have known the facts underlying the three claims Petitioner raised in his Second § 440 Motion. Accordingly, he could have raised those claims on direct appeal and in Petitioner's original habeas corpus petition. Petitioner does not allege, and the record does not suggest, any extraordinary circumstances that prevented him from doing so.

Because the three new claims do not "relate back" and since there is no basis for equitable tolling, the question of whether the new claims are time-barred turns on whether the one-year limitations period had already expired as of July 14, 2014, when Petitioner requested permission to amend his petition for a second time. As explained below, the answer to that question itself turns on whether Petitioner's appeals from the denial of his § 440 motions were timely filed.

Since Petitioner did not petition the United States Supreme Court for a writ of certiorari, his conviction became final on September 6, 2010—90 days after the New York Court of Appeals denied his leave application. Petitioner did not seek permission to amend his petition for a second time until July 14, 2014—1,408 days later. Accordingly, Petitioner's second amended petition would be filed outside the one-year period of limitation unless at least 1,043 of the 1,408 days were tolled.

13

As noted above, 28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted" toward the one-year period of limitation. A properly filed application "'remains pending' 'until the application has achieved final resolution through the State's postconviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 141 (2006) (emphasis in original). In other words, "only a *timely* appeal tolls AEDPA's 1-year limitations period for the time between the lower court's adverse decision and the filing of a notice of appeal in the higher court." *Id.* at 197 (emphasis in original).

Petitioner's first § 440.10 motion was filed on February 15, 2011, and was denied by Justice Dowling in a Decision and Order dated July 19, 2011. Petitioner applied for leave to appeal from the denial of his § 440 motion, but that application was denied in a Decision and Order dated July 12, 2012. If Petitioner's leave application was timely filed, the entire 514-day period between the February 15, 2011, filing and the issuance of the July 12, 2012, order denying leave to appeal would be tolled by operation of § 2244(d)(2).

Petitioner's second § 440.10 motion was filed sometime in January 2013 and was denied by Justice Dowling in a Decision and Order dated September 26, 2013. On July 3, 2014, the Appellate Division denied Petitioner leave to appeal Justice Dowling's ruling. Assuming that the Second § 440 Motion was filed on January 9, 2013, as Petitioner claimed in the affidavit of

14

service accompanying that motion, and that Petitioner's leave application was timely filed, that motion was pending for 541 days. Moreover, if the two § 440 motions were, in fact, pending for a total of 1,055 days (*i.e.*, 514 days plus 541 days), the one-year period of limitation would not yet have expired on July 14, 2014, when Petitioner requested permission to amend his petition for a second time.

Respondent's argument that the one-year period expired before Petitioner even filed his second § 440 motion is predicated on the belief that Petitioner's application for leave to appeal from the denial of his first § 440 motion was untimely. That belief, however, is based on the proposition that "Petitioner was required to file [his] request for leave to appeal to the Appellate Division within thirty days of the denial of his motion to vacate." Memorandum of Law in Opposition to Second Motion to Amend Petition, p. 5. However, the authority which Respondent offers for this proposition—CPL § 460.10(1)(a)—is inapposite. That provision relates to appeals "taken as of right to an intermediate appellate court or directly to the court of appeals from a judgment, sentence or order of a criminal court." CPL § 460.10(1). Appeals from an order denying a § 440.10 motion to vacate a judgment of conviction are not as of right. CPL § 450.15 expressly provides that a defendant must obtain "a certificate granting leave to appeal ... issued pursuant to section 460.15" in order to appeal an order denying a § 440.10 motion.

CPL § 460.15(2) provides that "[a]n application for such a certificate must be made in a manner determined by the rules of the appellate division of the department in which such intermediate appellate court is located." The rules of the Appellate Division, Second Department, require that "[a]n application pursuant to CPL 450.15 and CPL 460.15 for leave to

appeal to this court from an order shall be made in writing within 30 days after service of the order upon the applicant ...." 22 N.Y.C.R.R. § 670.12(b)(1). This, incidentally, is the same time limit set forth in 460.10, which requires that a written notice of appeal be filed "within thirty days after service upon such party of a copy of an order not included in a judgment ...." CPL § 460.10(1)(a).

In light of this statutory language, the New York Court of Appeals has expressly held that "service by the prevailing party is necessary under CPL 460.10 in order to commence the time period for the other party to take an appeal." *People v. Washington*, 86 N.Y.2d 853, 854, 633 N.Y.S.2d 476, 477 (1995). Similarly, the Second Circuit, relying on *Washington*, has held that a defendant's time to request leave to appeal to the Appellate Division from the denial of a § 440.10 motion does not begin to run until the defendant is "served with a copy of the order denying the ... [m]otion." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000). In light of these authorities, the Court cannot accept the proposition that Petitioner's time to request leave to appeal the denial of the § 440 motions expired thirty days after issuance of the orders denying the motions. Rather, the Court must determine the date on which the order denying the § 440 motion was served on Petitioner in order to determine when, if ever, his time to apply for leave to appeal expired.

Respondent has not provided any evidence as to the dates on which the orders denying Petitioner's § 440 motions were served on Petitioner. Accordingly, it is

**ORDERED** that, on or before February 10, 2017, Respondent shall provide the Court with (1) notices of entry or other evidence establishing the dates on which Justice Dowling's decisions and orders denying Petitioner's § 440 motions were served on Petitioner and/or (2)

16

supplemental briefing relating to question of when the 30-day period for seeking leave to appeal from the denial of a § 440.10 motion commences. If Respondent files supplemental submissions within the time provided, Petitioner shall have until March 10, 2017, in which to respond to those submissions. If the Court does not receive any supplemental submissions from Respondent by the close of business on February 10, 2017, it will grant Petitioner's application to file a third amended petition.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: January 6, 2017
Brooklyn, New York